WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee – NY Office
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
Tel. (212) 510-0500
By:    Greg M. Zipes
         Trial Attorney

**HEARING DATE: April 7, 2025**
**HEARING TIME:  2:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : |  |
|  | : | Chapter 15 |
| Odebrecht Engenharia e Construção S.A. - | : |  |
| Em Recuperação Judicial, et al, | : | Case No. 25-10482 (MG) |
|  | : |  |
| Debtors in a Foreign Proceeding. | : |  |

-------------------------------------------------------- x

## OBJECTION OF UNITED STATES TRUSTEE TO THE
## VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF
## <u>A FOREIGN MAIN PROCEEDING AND RELATED RELIEF</u>

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................................................... iii

**I. PRELIMINARY STATEMENT** ........................................................................................... 1

**II. BACKGROUND** ................................................................................................................... 2

    **A.  General Background** ....................................................................................................... 2

    **B.  The RJ Plan** .................................................................................................................... 3

    **C.  The Proposed Order** ...................................................................................................... 6

**III. ARGUMENT** ....................................................................................................................... 8

**A.  The Relevant Law** ............................................................................................................ 8

    **A.  The Limitation of Liability Provision in the Proposed Order is a Veiled Exculpation Clause** ................................................................................................................................. 11

        **i.  The Limitation of Liability has No Basis in The RJ Plan or The Bankruptcy Code.** ................................................................................................................................. 11

        **ii.  The Limitation of Liability Fails to Include the Required Safeguards Imposed on Exculpation Agreements.** ........................................................................................... 13

    **B.  The Proposed Order Creates Third Party Releases** .................................................. 16

    **C.  The Revised Proposed Order Seeks to Impermissibly Pay the Indenture Trustees' Fees, Costs, and Expenses** ................................................................................................. 18

    **D.  The Proposed Order Appears to Impose an Impermissible Gatekeeping Provision** 19

**IV. RESERVATION OF RIGHTS** ......................................................................................... 20

**V. CONCLUSION** .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Case Citations**

*In re Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009)………………….. 11, 17

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031 (5th Cir. 2012)……………………………………………………… *passim*

*Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 144 S. Ct. 2071 (2024) ……... 18

*Hilton v. Guyot*, 159 U.S. 113 (1895) ……………………………………………….. 8

*In re Aegean Marine Petroleum Network, Inc.* 599 B.R. 717(Bankr. S.D.N.Y. 2019) ……………………………………………………………………………… 15

*In re Condor Ins. Ltd.*, 601 F.3d 319 (5th Cir. 2010) …………………………….. 9

*In re Iida*, 377 B.R. 243 (B.A.P. 9th Cir. 2007)…………………………………… 8

*In re Lupatech S.A.*, 611 B.R. 496 (Bankr. S.D.N.Y. 2020) ………………………. 18

*In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022) …………………….. 14

*In re Pac. Lumber Co.*, 584 F.3d 229 (5th Cir.2009) …………………………….. 15, 18

*In re PT Bakrie Telecom Tbk*, 628 B.R. 859(Bankr. S.D.N.Y. 2021) …………….. 17

*In re PTL Holdings LLC*, 2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011) …... 15

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ………………………….. 14

*In re Washington Mut., Inc.*, 442 B.R. 31(Bankr. D. Del. 2011) …………………. 15

*Lavie v. Ran (In re Ran)*, 607 F.3d 1017 (Cir. 5th 2010) ………………………… 8

*Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022) ……………... 15

*Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146 (5th Cir. 1990) ……….. 9

*Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641 (E.D. Va. 2022) …. 15

*United States v. J.A. Jones Constr. Grp., LLC*, 333 B.R. 637 (E.D.N.Y. 2005) ….. 9

**Statute Citations**

11 U.S.C. § 304 (repealed) …………………………………………………… 11, 12, 17

11 U.S.C. § 1507 ……………………………………………………….. *passim*

11 U.S.C. § 1508 ……………………………………………………….. 9

11 U.S.C. § 1509 ……………………………………………………….. 9

N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8 …………………………. 16

**Other Citations**

Model Law on Cross-Border Insolvency ……………………………………. 8

H.R. Rep. No. 109-31 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 178 …………. 8

**TO THE HONORABLE MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), by and through his undersigned counsel, hereby submits this objection (the "Objection") to the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Petition") [ECF No. 2] and the attached proposed Recognition Order (the "Proposed Order") in connection with the judicial reorganization plan ("RJ Plan") [ECF No. 3-3] filed on behalf of Odebrecht Engenharia e Construção S.A. - Em Recuperação Judicial ("OEC") and its affiliated debtors (together, the "Debtors") in these Chapter 15 Cases in the 2nd Bankruptcy and Judicial Reorganization Court of the State Capital District of São Paulo (the "Brazilian Court"). ECF No. 1. In support thereof, the United States Trustee respectfully states as follows:[1]

## I. PRELIMINARY STATEMENT

In contrast to a case brought under Chapter 11 of the Bankruptcy Code where the Court has expansive oversight and supervision over the matters before it, a case brought under Chapter 15 of the Bankruptcy Code is a proceeding where the United States court provides ancillary assistance to a judicial or administrative proceeding in a foreign country, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to court supervision by a foreign court, for the purpose of reorganization or liquidation. As such, the United States court does not independently expand the restructuring efforts before the supervision of a foreign court.

Before this Court is a plan of reorganization that was approved by the Brazilian Court (the "RJ Plan"). In addition to seeking recognition of this plan, the Foreign Representative is seeking

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Petition.

expansive relief from the United States Bankruptcy Court under the guise of a Chapter 15 proceeding. Among the expansive relief sought are (i) broad exculpation provisions, (ii) the creation of improper third-party releases, (iii) an unexplained gatekeeping provision, and (iv) impermissible Court approved payments to an indenture trustee. The relief sought significantly exceeds the terms of the RJ Plan or the Confirmation Order. A United States Bankruptcy court assists in the enforcement of orders rendered in the foreign jurisdiction, it does not expand or alter the relief provided as the Foreign Representative seeks to do here. This abuse of Chapter 15 should not be tolerated.

## II. BACKGROUND

### A. **General Background**

1.     On March 14, 2025, Adriana Henry Meirelles, in her capacity as the foreign representative (the "Foreign Representative"), filed her form Chapter 15 Petition [ECF No. 1] and her Verified Petition for Recognition (the "Petition") along with the Proposed Order. ECF No. 2.

2.     The Petition *inter alia* requested that the Court recognize and enforce the RJ Plan (as defined by the Petition). The Petition also requested that the Court

> [p]ermanently enjoining all parties from commencing, continuing or taking any action or asserting any claim in the United States that is inconsistent with, in contravention with, or would interfere with or impede the administration, implementation and/or consummation of the Brazilian RJ Proceeding or the RJ Plan, including, without limitation, to obtain possession of, exercise control over, or assert claims against the Debtors or their property extinguished, novated, cancelled, discharged or released under the RJ Plan and the Brazilian RJ Proceeding.

Petition, p. 2 of 103.

3.     Also on March 14, 2025, the Foreign Representative filed a *Motion for Entry of an Order Scheduling a Hearing the Petition*. ECF No. 7. The Court scheduled the Hearing for April 7, 2025. ECF No. 9.

2

B.      **The RJ Plan**

4.      A copy of the RJ Plan was attached to the Meirelles Declaration as Exhibit <u>C</u>.  *See* Declaration of Adriana Henry Meirelles in Support of Verified Petition Under Chapter 15 for an Order Granting Recognition and Final Relief in Aid of Foreign Proceeding Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520(A) and 1521A (the "<u>Meirelles</u> <u>Declaration</u>"). ECF No. 3.

5.      "Debtors" are defined by the RJ Plan as, ""Debtors" are the companies described ***in items (1) to (10)*** of the preamble to this Plan." Plan § 1.1.66 (emphasis added).

6.      The preamble lists the following companies:

    (1)     ODEBRECHT ENGENHARIA E CONSTRUÇÃO S.A. - IN JUDICIAL REORGANIZATION
    (2)     ODEBRECHT HOLDCO FINANCE LIMITED
    (3)     OEC S.A. - IN JUDICIAL REORGANIZATION
    (4)     OEC FINANCE LIMITED
    (5)     CNO S.A. - IN JUDICIAL REORGANIZATION
    (6)     BELGRÁVIA SERVIÇOS E PARTICIPAÇÕES S.A. - IN JUDICIAL REORGANIZATION
    (7)     TENENGE OVERSEAS CORPORATION, Ltd.
    (8)      CBPO ENGENHARIA LTDA. - IN JUDICIAL REORGANIZATION
    (9)     OENGER S.A. - IN JUDICIAL REORGANIZATION,
    (10)    ODEBRECHT OVERSEAS LIMITED
    (11)    OECI S.A. – IN JUDICIAL REORGANIZATION
    (12)    TENENGE ENGENHARIA LTDA. – IN JUDICIAL REORGANIZATION

*Id*. at pp. 4-5 of 1498 (Preamble).

7.      Of this list, the Preamble states that "jointly, companies listed ***in items (1) to (11)***, the "Debtors"). *Id* (emphasis added).

8.      The Preamble of the RJ Plan further states that,

the Companies under Reorganization are part of the business division of the Novonor Group (current name of the Odebrecht Group), one of the largest private business groups in the country, under the control of Novonor S.A. - In Judicial Reorganization ("Novonor Group"), which is responsible for engineering, infrastructure and civil construction services, formed by several independent companies under common control (direct or indirect) of ODB E&C ("OEC Group").

3

*Id*. at pp. 5 of 1498.

9.      "OEC Group" is defined as "has the meaning given in Recital (i) of this Plan *Id*. at

§ 1.1.80.

10.     "DIP Debentures Indenture" is defined as "has the meaning given in Clause 7.1.4

of this Plan." *Id*. at § 1.1.73.

11.     Clause 7.1.4 discussing the DIP Debentures Indenture does not discuss the payment

of any fees, expenses, or costs. *Id*.

12.     Through the Brazilian proceeding, the Debtors seek,

in the context of the restructuring to be implemented in this Judicial Reorganization,
the Debtors sought to raise new funds, obtaining a firm commitment from the
Anchor Financier (as defined below) to, upon verification of certain precedent
conditions, grant priority extra-bankruptcy financing in the total amount of USD
120 million, to be implemented in the debtor-in-possession financing modality. . .

*Id*. at pp. 6–7 of 1498.

13.     The RJ Plan further provides that,

Procedure for Implementation of the Plan Abroad. The Companies under
Reorganization are authorized to adopt all necessary measures to submit the
Approval of the Plan to the process of homologation of effects before the United
States Bankruptcy Court of the Southern District of New York, with the objective
of giving effects to the Plan in the North American territory, ***under the terms of the
applicable legislation***, as well as any other procedures necessary in that jurisdiction
for the implementation of this Plan, subject to the applicable capital market laws,
***The auxiliary processes abroad cannot change the terms and conditions of this
Plan, which will prevail***, in any case, those expressed by the auxiliary processes
abroad that may eventually conflict.

*Id*. at § 4.2 (emphasis added).

14.     The RJ plan further provides for the allocation of funds:

(i)     first, for payment of the Extraordinary Remuneration and the Commitment
        Remuneration under the dip Bonds Deeds;

(ii)    after full allocation provided for in item (i) above, at least USD
        50,000,000.00 (fifty million Dollars) shall be allocated to the payment of

4

the Unsecured Capital Market Creditors - Option A, pursuant to Clause 3.3.2.1 of this Plan ("Resources Allocated for Repurchase"); and

(iii)    after the full allocation provided for in item (ii) above, the amount received from dip Financing that exceeds the Funds Allocated for the Payment of Option A - Capital Market will be allocated, at the sole discretion of the Companies under Reorganization and NewCo's management, to the increase of NewCo's working capital and/or fulfillment of obligations provided for in this Plan.

*Id*. at § 7.1.5. There does not appear to be any allocation of funds for payment of the indenture

trustee. *Id*.

15.    With respect to releases, the RJ Plan provides:

11.5. Settlement. The fulfillment of the payment obligations in accordance with the terms and conditions established in this Plan will entail, automatically and regardless of any additional, broad, general and unrestricted formality, the discharge of all Bankruptcy Credits against the Companies under Reorganization and their officers, directors, agents, employees and representatives.

*Id*. at § 11.5.

16.    The RJ Plan also provides for a binding effect for the terms and provisions of the

Plan:

9.1. Binding of the Plan. The provisions of the Plan bind the Companies under Reorganization and the Bankruptcy Creditors, and their respective assignees and successors, in any capacity, as well as creditors who may become Bankruptcy Creditors of the Companies under Reorganization by virtue of the attribution of incidental, subsidiary or joint liability, by virtue of law or judicial, administrative, arbitral decision, provided that the triggering event of such Bankruptcy Credit is prior to the filing of this Judicial Reorganization, as of the Judicial Approval Date of the Plan.

*Id*. at § 9.1

17.    Additionally, with respect to changes to the RJ Plan:

Amendments, Amendments or Modifications to the Plan after the Closing of the Judicial Reorganization. Amendments, alterations or modifications to the Plan proposed after the closure of the Judicial Reorganization, pursuant to article 61 of the LFR, if accepted by the Companies under Reorganization, must be approved at a Creditors' Meeting, observing the quorum provided for in article 45 of the LFR.

*Id*. at § 9.6.1.

18.    Further, changes to the RJ Plan in advance of Closing of the Brazilian proceedings

are provided for as follows:

> Amendments, alterations or modifications to the Plan may be proposed at any time
> after the Judicial Approval of the Plan, provided that (i) such amendments,
> alterations or modifications are accepted by the Companies under Reorganization
> and approved (i.a) if at a time prior to the closing of the Judicial Reorganization, at
> a Creditors' Meeting, under the terms of the LFR or (i.b) if at a time after the closing
> of the Judicial Reorganization, at a Creditors' Meeting; and (ii) once the
> disbursement date of the dip Financing has been verified, such amendments comply
> with the restrictions provided for in the Deeds of the dip Securities. Amendments
> to the Plan, provided that they are approved under the terms of the LFR, oblige all
> Bankruptcy Creditors, regardless of their express agreement with subsequent
> amendments. If the conditions of support of the Anchor Lender are terminated after
> the Judicial Approval of the Plan, the Companies under Reorganization shall call a
> new general meeting of creditors to resolve on the modifications to the terms and
> conditions of this Plan.

*Id*. at § 11.8.

19.    The RJ plan provides that,

> 11.13. Governing Law. The rights, duties and obligations arising from this Plan
> shall be governed, interpreted and performed ***in accordance with the laws in force
> in the Federal Republic of Brazil***, even if there are Credits originated under the
> laws of another jurisdiction, and, without any rules or principles of private
> international law being applied.

*Id*. at § 11.13 (emphasis added).

20.    On March 7, 2025, the  Brazilian Court entered the order confirming the RJ Plan

(the "Confirmation Order"), which was attached to the Meirelles Declaration as Exhibit D.

**C.    The Proposed Order**

21.    The Proposed Order limits the liability of officers and directors (the "Limitation of

Liability Provision"), as follows:

> The Directed Parties [as defined in the RJ Plan and below] and their respective
> officers, directors, employees, representatives, advisors, attorneys, professionals,
> and managers, in each case, solely in their respective capacities as a Directed Party,

6

shall be entitled to a full limitation of liability from and shall have no liability for any and all claims, obligations, suits, judgments, damages, rights, causes of action, liabilities from, or in connection with, any action or inaction taken in furtherance of and/or in accordance with this Order, this Chapter 15 Case, the Brazilian RJ Proceeding, the Brazilian Confirmation Order and the RJ Plan, except for any liability arising from any action or inaction constituting gross negligence, fraud or willful misconduct as determined by this Court.

Proposed Order, ¶ 6.[2]

22.    Directed parties are defined in the Revised Order (defined below) as

Collectively, the "Directed Parties" are: (i) The Bank of New York Mellon, as the indenture trustee (the "**Indenture Trustee**") under the indentures related to the 2024 Notes, the 2026 Notes, the 2027 Notes, the 2029 (the "**Indenture Trustee**") under the indentures related to the 2024 Notes, the 2026 Notes, the 2027 Notes, the 2029 Notes, the 2033 Notes, the 2046 Notes, and the Perpetual Notes (collectively, the "NY Notes"); (ii) the Depository Trust Company ("**DTC**"), Euroclear Bank S.A./N.V., and/or Clearstream Banking, Société Anonyme, as clearing systems, as applicable, (iii) Epiq Corporate Restructuring LLC, and (iv) the custodians of the NY Notes.

Revised order, FN 3 (emphasis in original).

23.    The Proposed Order provides the following injunction and gatekeeping responsibilities for the Court (the "Gatekeeping Provision"):

Except as provided in paragraph 11 of this Order, all persons and entities are permanently enjoined and restrained from (i) commencing or taking any action or asserting any claim, within the territorial jurisdiction of the United States, that is inconsistent with, in contravention with, or would interfere with or impede the administration, implementation and/or consummation of the RJ Plan, the Brazilian Confirmation Order or the terms of this Order and (ii) taking any action against the Debtors or their property located in the territorial jurisdiction of the United States to recover or offset any debt or claims that are extinguished, novated, cancelled, discharged or released under the RJ Plan and the Brazilian Confirmation Order. *No action may be taken within the territorial jurisdiction of the United States to confirm or enforce any award or judgment that would otherwise be in violation of this Order without first obtaining leave of this Court*.

Proposed Order at ¶ 9 (emphasis added).

---

[2] There is no reference to or definition of a "Directed Party" in the RJ Plan. A global search of the term throughout the entire 1498-page document yield no results. *See generally* RJ Plan.

7

24.     On March 26, 2025, the United States Trustee received a revised Proposed Order (the "Revised Proposed Order"). The Revised Proposed Order added language regarding payment of fees, costs, and expenses of the indenture trustee.

### III. ARGUMENT

#### A.    The Relevant Law

Chapter 15 was enacted in 2005 to implement the Model Law on Cross-Border Insolvency ("Model Law") formulated by the United Nations Commission on International Trade Law ("UNCITRAL"), and replaced former 11 U.S.C. § 304.12 *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1020 (Cir. 5th 2010); *In re Iida*, 377 B.R. 243, 256 (B.A.P. 9th Cir. 2007).  It was intended "to provide effective mechanisms for dealing with cases of cross-border insolvency," 11 U.S.C. § 1501(a), as well as to be "the exclusive door to ancillary assistance to foreign proceedings," thus "concentrat[ing] control of these questions in one court." H.R. Rep. No. 109-31, pt. 1, at 110 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 178. It was also intended to increase legal certainty, promote fairness and efficiency, protect and maximize value, and facilitate the rescue of financially troubled businesses. 11 U.S.C. § 1501(a).

Central to Chapter 15 is comity. Comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "It is not a rule of law, but one of practice, convenience, and expediency." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990) (quotation marks and citation omitted). "Within the context of Chapter 15, however, it is raised to a principal objective." *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012).

Section 1501(a) begins by listing, as one of Chapter 15's goals, the furtherance of cooperation between domestic and foreign courts in cross-border insolvency cases. Section 1508 goes on to provide that Chapter 15's provisions shall be interpreted by considering "its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. Comity considerations are explicitly included in the introduction to § 1507, and § 1509(b)(3) further provides that our courts "shall grant comity or cooperation to the foreign representative" of a foreign proceeding. Only after initiation of a foreign proceedings, then a filing in a United States court requesting recognition, and then an order of the United States court recognizing the proceeding can "the foreign representative . . . apply directly to a court in the United States for appropriate relief in that court." 11 U.S.C. § 1509(b)(2); *see also United States v. J.A. Jones Constr. Grp., LLC*, 333 B.R. 637, 638 (E.D.N.Y. 2005).

Chapter 15 provides for a broad range of relief. This includes the ability to sue and be sued in United States courts, to apply directly to a United States court for relief, to commence a non-Chapter 15 case, and to intervene in any United States case to which the debtor is a party. *In re Condor Ins. Ltd*., 601 F.3d 319, 324 (5th Cir. 2010). Section 1520 also provides for certain automatic relief upon recognition of a foreign main proceeding, like the one here, including an automatic stay and the power to prevent transfers of the debtor's property.

A bankruptcy court is also empowered under § 1521(a) to "grant any appropriate relief" necessary to "effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." Section 1507(a)  gives a court authority to provide "additional assistance," subject to certain restrictions imposed by Chapter 15 and specifically, § 1507(b). Section 1507(b)(1) requires that additional relief only be granted if the just treatment of creditors

9

is ensured. 11 U.S.C. § 1507(b)(1).  Section 1507(b) directs the Court to "consider whether such

assistance, consistent with principles of comity, will reasonably assure" the following:

> (1) just treatment of all holders of claims against or interests in the debtor's property;
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
> (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
> (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b)(1)-(5). These provisions embody the protections that were previously

contained in section 304[3] of the Bankruptcy Code, "with one critical exception: the principle of

comity was removed as one of the factors and elevated to the introductory paragraph." *In re Atlas*

---

[3] Repealed section 304, Cases ancillary to foreign proceedings, states,
> (a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.
> (b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may--
>> (1) enjoin the commencement or continuation of--
>>> (A) any action against--
>>>> (i) a debtor with respect to property involved in such foreign proceeding; or
>>>> (ii) such property; or
>>> (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
>> (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
>> (3) order other appropriate relief.
> (c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with--
>> (1) just treatment of all holders of claims against or interests in such estate;
>> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>> (3) prevention of preferential or fraudulent dispositions of property of such estate;
>> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title [11 USCS §§ 101 et seq.];
>> (5) comity; and
>> (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

*Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009). "Appropriate relief" is "relief previously available under Chapter 15's predecessor, § 304'" *Vitro S.A.B. de C.V.*, 701 F.3d at 1054; *see also In re Rede Energia S.A.*, 515 B.R. 69, 91-92 (Bankr. S.D.N.Y. 2014) (recognizing Brazilian Debtor in foreign recognition proceeding). "Only if a court determines that the requested relief was not formerly available under § 304 should a court consider whether relief would be appropriate as 'additional assistance' under § 1507." *Id.*

Moreover, all relief under chapter 15, including relief requested under either section 1521 or section 1507, is subject to the limits in section 1506, which permits a court to decline to take any action, including granting additional relief pursuant to section 1521 or additional assistance pursuant to section 1507 of the Bankruptcy Code, if such action would be "manifestly contrary" to the public policy of this country. *Rede Energia S.A.*, 515 B.R. at 91-92.

### A. <u>The Limitation of Liability Provision in the Proposed Order is a Veiled Exculpation Clause</u>

### i. <u>The Limitation of Liability has No Basis in The RJ Plan or The Bankruptcy Code.</u>

The Proposed Order seeks to limit the liability of "The Directed Parties and their respective officers, directors, employees, representatives, advisors, attorneys, professionals, and managers . . ." *See* Proposed Order at ¶ 6. This relief is extraordinary.

The limitation of liability requested in the Petition is nowhere found in the RJ Plan or the Confirmation Order. A stated above, Chapter 15, unlike Chapter 11, is merely an ancillary proceeding to enforce a foreign jurisdiction's bankruptcy, in this case, Brazil.

There is no statutory basis to expand the relief beyond that which is contained in the RJ Plan. After recognition of a foreign insolvency proceeding, a bankruptcy court is empowered under section 1521 to "grant any appropriate relief" when necessary "to effectuate the purpose of

11

this chapter and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a); *Vitro S.A.B. de C.V.*, 701 F.3d at 1044.

The Court in *Vitro* adopted a three-step framework for analyzing requests under Chapter *after* recognition. Under the *Vitro* court's framework, first, a court should consider whether the requested relief falls under sections 1521(a)(1)-(7) and (b). *Id.* at 1056. Second, if it does not, then a court should decide whether the requested relief is "appropriate relief" under section 1521(a). *Id.* The inquiry here focuses on whether such relief was previously available under section 304 or is currently provided for under United States law. *Id.* at 1056-57. Third, if the requested relief is not available under section 1521, then a court should consider whether the requested relief is available as "additional assistance" under section 1507. *Id.* at 1057. Neither section 1520, 1521, nor 1507 provides the Court granted the requested liability provisions here.

Section 1520 provides for certain automatic relief upon recognition of a foreign main proceeding, including an automatic stay and the power to prevent transfers of the debtor's property. A bankruptcy court is also empowered under section 1521(a) to "grant any appropriate relief" necessary to "effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." None of the seven bases for relief enumerated in section 1521(a) apply here. The first five concern the debtor—its assets, affairs, rights, obligations, or liabilities—and do not explicitly authorize the limitation of liability language here. The sixth enumerated provision concerns an extension of relief upon the filing of a petition, which is inapplicable to the relief requested. The seventh enumerated provision concerns the relief available to a trustee, which does not include authority for the type of relief afforded by limitation of liability at issue in this chapter 15 case. Accordingly, the limitation of liability aka exculpation clause is not relief that is available under sections 1521(a)(1)-(7). *See Vitro*, 701 F.3d at 1058-59.

12

There can likewise be no support found pursuant to section 1507(b) as "additional assistance." Pursuant to section 1507, the court is authorized to grant any "additional assistance" available under the Bankruptcy Code or under "other laws of the United States," provided that such assistance is consistent with the principles of comity and satisfies the fairness considerations set forth in section 1507(b). *Rede Energia S.A.*, 515 B.R. at 90.

The Debtors can only get the relief that is set forth in the RJ Plan or is otherwise sanctioned by the Bankruptcy Code- neither of which circumstance exists here. Furthermore, the RJ Plan itself states clearly its binding effect (§ 9.1) and a robust procedure for amending or modifying the RJ Plan (§§ 9.6.1 and 11.8), neither of which include requesting new relief from a foreign jurisdiction.

The Proposed Order states that the limited liability provision applies to, "***The Directed Parties [as defined in the RJ Plan and below]*** and their respective officers, directors, employees, representatives, advisors, attorneys, professionals, and managers, in each case, solely in their respective capacities as a Directed Party . . ." Proposed Order, ¶ 6. However, despite referencing the RJ Plan, there is no reference throughout the entirety of the RJ Plan to a "Directed Party."

### ii.    The Limitation of Liability Fails to Include the Required Safeguards Imposed on Exculpation Agreements.

Moreover, assuming *arguendo* that such a provision is appropriate here–which it is not–the proposed limitation of liability lacks the hallmarks of an acceptable exculpation provision in a chapter 11 proceeding. As stated, there is no temporal scope. Indeed the recipients of this far-reaching exculpation will be released from liabilities "from, or in connection with, any action or inaction taken in furtherance of and/or in accordance with this Order, this Chapter 15 Case, the Brazilian RJ Proceeding, the Brazilian Confirmation Order and the RJ Plan." Proposed Order at ¶ 6.

13

Moreover, the limitations of liability found in the Proposed Order and Petition, while not titled "exculpation", have the same effect. Regardless of whether they are named limits on liability or exculpation, they must still comport with public policy and case law. Here, the purported limitation on liability is overly broad and in contravention of the case law. Circuits courts in other circuits have similarly found that the purported limit on liability is in violation of the law.

First, the purported limit on liability should not extend past the restructuring effective date, to avoid exculpating actions that have not yet occurred and are as yet unknown. *In re Washington Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011) (exculpations cover "actions in the bankruptcy case") (citing *In re PWS Holding Corp*., 228 F.3d 224, 246 (3d Cir. 2000)). Exculpation clauses should not extend past the effective date of a plan, to avoid exculpating actions that have not yet occurred and are yet unknown. *See In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bank. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date"). Here, there is no temporal scope found in the limitation of liability.

In addition, entities cannot receive prospective immunity by exculpation, just as they cannot receive prospective immunity through a release. *See Wash. Mut*., 442 B.R. at 348 ("The Liquidating Trust and its Trustee have not done anything yet for which they need a release. They will not even come into existence until the Plan is confirmed."). The Proposed Order should not grant prospective releases to entities that do not yet exist, exculpate them, or limit liability on account of future conduct and claims that have yet to arise.

Second, the purported limit on liability extends beyond what bankruptcy courts have allowed in this District for "claims against exculpated parties based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court." *In re Aegean Marine Petroleum Network, Inc*. 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019). The current language

14

provides for parties to have limited liability "from, or in connection with, any action or inaction taken in furtherance of and/or in accordance with this Order, this Chapter 15 Case, the Brazilian RJ Proceeding, the Brazilian Confirmation Order and the RJ Plan." This goes beyond the relief approved by *Aegean*.

Third, mischaracterized limitation of liability is inappropriate because the list of parties, in addition to being unknowable by virtue of the inclusion of "respective Affiliates", apparently extends to individuals or entities that cannot be classified as estate fiduciaries. Exculpation should not shield anyone who is not a court-supervised fiduciary from liability. *Aegean Marine*, 599 B.R. at 721. Courts have held that trustees, the debtor's officers and directors, official committees and their members, and counsel to estate fiduciaries may not be exculpated for conduct that is not court-supervised conduct that carries out estate fiduciary duties during the chapter 11 case, that is, conduct that occurs after the petition has been filed and before the plan's effective date. *See, e.g., Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641 (E.D. Va. 2022); *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, 2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011); *In re Pac. Lumber Co.,* 584 F.3d 229, 252 (5th Cir.2009). Exculpation is based "to some extent . . . on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions." *Aegean*, 599 B.R. at 720. Parties who had nothing to do with the bankruptcy process should not be entitled to benefit from such exculpations.

Fourth, while the purported exculpation excepts "gross negligence, fraud or willful misconduct", it does not also carve out claims bad faith, breach of fiduciary duty, and legal malpractice–releases of which are prohibited under section of the New York Rules of Professional Conduct, *i.e.*, N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1). Moreover, this Court

15

is now charged with making determinations regarding gross negligence, fraud, or willful conduct, of entities outside of the United States, that do no business with the United States and may be subject to different understandings of the common-place legal construction for these three findings of a Court. Simply put, the carve out is superfluous and any exculpation, limitation of liability, or attendant limits should be wholly construed by Brazilian Courts.

### B.  The Proposed Order Creates Third Party Releases

The Debtors have provided no authority to seek relief of this Court beyond what is sanctioned in the RJ Plan – which is instead seeking expanded releases for non-debtor third parties along with broad limits on liability (discussed further *infra*). The RJ Plan provides the following with respect to releases for the ***Debtor***:

> 11.5. Settlement. The fulfillment of the payment obligations in accordance with the terms and conditions established in this Plan will entail, automatically and regardless of any additional, broad, general and unrestricted formality, the discharge of all Bankruptcy Credits ***against the Companies under Reorganization and their officers, directors, agents, employees and representatives***.

RJ Plan at § 11.5 (emphasis added).

However, the Revised Order provides:

> Except as provided in paragraph 11 of this Order, ***all persons and entities are permanently enjoined and restrained*** from (i) commencing or taking any action or asserting any claim, within the territorial jurisdiction of the United States, that is inconsistent with, in contravention with, or would interfere with or impede the administration, implementation and/or consummation of the RJ Plan, the Brazilian Confirmation Order or the terms of this Order and (ii) ***taking any action against the Debtors or their property*** located in the territorial jurisdiction of the United States to recover or offset any debt or claims that are extinguished, novated, cancelled, discharged or released under the RJ Plan and the Brazilian Confirmation Order. No action may be taken within the territorial jurisdiction of the United States to confirm or enforce any award or judgment that would otherwise be in violation of this Order without first obtaining leave of this Court.

Revised Order at ¶ 10 (emphasis added). Paragraph 10 therefore creates an expansive third-party release that did not exist in the Brazilian Proceedings, including the RJ plan or the Confirmation

16

Order. The Revised order enjoins *all persons and entities* from *taking any action*. However, the discharge provided in the RJ Plan granted relief with respect to the holders of "Bankruptcy Credits", a limited set of claims held against the "Companies Under Reorganization." The RJ Plan doesn't even include releases with respect to all Debtors, and instead uses the much more restrictive term "Companies under Reorganization."[4]

Section 1521(a) includes a bankruptcy court's "more general power to grant 'any appropriate relief.'" *Vitro*, 701 F. 3d at 1059. But the statute ties that general power to a specific precondition, that such relief must be "necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors. *In PT Bakrie Telecom Tbk*, the Court (Hon. Judge Lane) observed that:

> Courts have found such "appropriate relief" under Section 1521(a) to be the same type of relief that was previously available under Chapter 15's predecessor, Section 304 of the Bankruptcy Code. *Vitro II*, 701 F.3d at 1054. But relief under Section 1521(a) may only be granted if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a); *see also In re Intl. Banking Corp. B.S.C.*, 439 B.R. 614, 626–27 (Bankr. S.D.N.Y. 2010) (same). "[S]ufficient protection" embodies three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr.C.D.Cal.2005)).

*In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 876 (Bankr. S.D.N.Y. 2021).

Under the *ejusdem generis* canon, "the catchall must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it. *Harrington v. Purdue Pharma, L.P.*, 603 U.S.204, 144 S. Ct. 2071, 2082-83 (2024) Paired with its "context dependent" term "appropriate," *id.* at 2083, the Releases sought by the

---

[4] The Preamble of the RJ Plan appears to assert there are 8 companies current under a reorganization, but it is not clear from the RJ Plan what reorganization proceedings are relevant or who is included in in section 11.5.

Debtor are not similar in nature to the relief provided in section 1521(a). The relief provided in section 1521(a)-(7) protects the Debtor, Debtor's assets and creditors. However, the proposed Releases are designed to protect non-debtors. In *Vitro*, the Fifth Circuit found similarly in discussing section 1521(a)'s grant of "any appropriate relief." The *Vitro* court stated:

> The relief Vitro seeks, a non-consensual, non-debtor release through a bankruptcy proceeding, is generally not available under United States law. Indeed, this court has explicitly prohibited such relief. *In re Pac. Lumber Co.,* 584 F.3d 229, 251–52 (5th Cir.2009) (discharge of debtor's debt does not affect liability of other entities on such debt and denying non-debtor release and permanent injunction); *In re Zale Corp.,* 62 F.3d 746, 760 (5th Cir.1995) ("Section 524 prohibits the discharge of debts of nondebtors."). Because our law prohibits the requested discharge, a request for such relief more properly falls under § 1507, which was included to address such circumstances.

*Vitro,* 701 F.3d at 1059.

Moreover, the Releases here do not fall within the category of "appropriate relief" because third-party releases may not be imposed without consent through a bankruptcy plan under United States law. *See Purdue Pharma, L.P.*, 144 S. Ct. 2071. Additionally, the Court's recognition and enforcement of the Releases is not necessary "to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors" under section 1521(a).

Accordingly, just as there is no basis to approve the exculpation provisions veiled as limits on liability, there is no basis in the RJ Plan or the Bankruptcy Code to support the disguised third-party releases.

**C.**   **The Revised Proposed Order Seeks to Impermissibly Pay the Indenture Trustees' Fees, Costs, and Expenses**

On March 26, 2025, the United States Trustee received a revised Proposed Order (the "Revised Proposed Order"). The Revised Proposed Order added language regarding payment of fees, costs, and expenses of the indenture trustee. In *Lupatech*, this Court allowed for payment of trustee expenses out of "monies being distributed to the holders of the New Notes under the New

18

Indenture." *In re Lupatech S.A.*, 611 B.R. 496, 503 (Bankr. S.D.N.Y. 2020). Here, the Debtors have not explained why the additional relief as outlined in an unfiled recognition order, which grants the indenture trustee from the Debtors' general estate, is appropriate. This provision was not in the RJ Plan, and it was not in the Proposed Order filed with the Court. Instead, the RJ Plan and Brazilian Confirmation Order only appear to provide the Indenture Trustee with a charging lien.

Why this change was requested and what statutory basis there is for the imposition of fees is not explained by the RJ Plan or Confirmation Order. Section 1520 must be met, and if it cannot, then the movants should provide ample basis under section 1507 why such extraordinary and likely exorbitant fees should be imposed. Accordingly, such costs should not be paid.

### D. <u>The Proposed Order Appears to Impose an Impermissible Gatekeeping Provision</u>

Just as the Proposed Order seeks to impose an exculpation provision without meeting the standards under sections 1521 or 1507 and creates an obligation to pay expenses and fees for the indenture trustees, the Proposed Order also seeks to apply an impermissible gatekeeping provision. The provision reads, "[n]o action may be taken within the territorial jurisdiction of the United States to confirm or enforce any award or judgment that would otherwise be in violation of this Order without first obtaining leave of this Court." Proposed Order at ¶ 9. Gatekeeping provisions are not permissible and even if they were, the RJ Plan or the Confirmation Order provide no basis that a United States Bankruptcy Court should be arbiter *ad infinitum*. The Bankruptcy Court is recognizing the foreign proceedings where the actual bankruptcy is occurring. Why should the Brazilian Court be an inappropriate forum to adjudicate in some or all circumstances? Clarification on this language should be provided.

## IV. RESERVATION OF RIGHTS

The United States Trustee reserves his right to supplement, modify, or amend this Objection in response to any amendments, modifications, or otherwise submitted by the Foreign Representatives, proposed Debtors, or any other party, including, but not limited to, any revised proposed orders.

## V. CONCLUSION

For the reasons set forth above, this Court should sustain the Objection and grant such other and further relief as it may deem just and proper.

Dated: New York, New York
      April 1, 2025

                          Respectfully submitted,

                          WILLIAM K. HARRINGTON
                          UNITED STATES TRUSTEE

   By:    */s/ Greg M. Zipes*
                Greg M. Zipes
                Trial Attorney
                One Bowling Green, Room 534
                New York, NY 10004-1408
                Telephone: (212) 510-0500

20